

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEFFREY YOUNG, 89-A-4618,

            Plaintiff,

  v.

P. CORCORAN, Prison Sergeant,
D. LOWE, Prison Sergeant,
JAMES CONWAY, Warden,
KAREN BELLAMY, Director of
Inmate Grievance Program,
GLENN GOORD, Commissioner, and
BRIAN FISCHER, Commissioner,

            Defendants.
_____

**DECISION AND ORDER**

6:14-CV-6526 EAW

## INTRODUCTION

*Pro se* plaintiff Jeffrey Young ("Plaintiff"), an inmate currently housed at the New York State Clinton Correctional Facility, brings this action alleging First Amendment claims in violation of 42 U.S.C. § 1983 and claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc *et seq.* ("RLUIPA"). (Dkt. 1).

Presently before the Court is Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 5). For the following reasons, Defendants' motion to dismiss is granted, and Plaintiff's complaint is dismissed in its entirety.

## BACKGROUND

Prior to September 2, 2010, the New York State Department of Corrections and Community Supervision ("DOCCS") had a policy that only Rastafarian inmates were

permitted to wear dreadlocks. Inmates registered under any other religion were required to cut their hair in accordance with DOCCS regulations. This policy was changed effective September 2, 2010, so as to permit the dreadlock hairstyle regardless of religious affiliation. *See Amaker v. Goord*, No. 06-CV-490A (Sr.), 2012 WL 4718661, at *8 (W.D.N.Y. Aug. 16, 2012) ("Directive 4914, which regulates Inmate Grooming Standards, was modified on September 2, 2010 to allow the 'dreadlock hairstyle.'") (citation omitted). The Court takes judicial notice of this fact for the purpose of deciding Defendants' motion to dismiss. *See Nimmons v. Fischer*, No. 11-CV-817-A, 2013 WL 4495006, at *10 (W.D.N.Y. Aug. 20, 2013) (taking judicial notice of DOCCS Directive 4914 on motion to dismiss).

Plaintiff alleges that, on or about August 24, 2007, Defendant Prison Sergeant P. Corcoran ("Corcoran") gave him an order to cut his hair, or else he would be kept under "keeplock". (Dkt. 1 at ¶ 6). Approximately three days later, a similar order was given to Plaintiff by Defendant Prison Sergeant D. Lowe ("Lowe"). (*Id.* at ¶ 7). Plaintiff alleges that, on August 29, 2007, under "force and/or pressure" he changed his religious denomination from Muslim to Rastafarian to avoid having to cut his hair. (*Id.* at ¶¶ 8-9). Plaintiff subsequently filed a grievance concerning this incident, which was denied by Defendant Karen Bellamy, Director of Inmate Grievance Program ("Bellamy"), on October 31, 2007. (*Id.* at ¶¶ 10-11; *see also* Dkt. 5-2 at 14).

On May 29, 2008, Plaintiff filed a second grievance and wrote a letter to the Warden, Defendant James Conway ("Conway"), seeking to keep his dreadlocks and

change his religious denomination back to Muslim. (Dkt. 1 at ¶ 12). This grievance was also denied. (*Id.*).

Plaintiff, at some unspecified time after these events, "gave in" and cut his hair, though he did not request to change his faith back to Islam until a grievance he subsequently filed on April 2, 2013. (*Id.* at ¶¶ 15, 17; Dkt. 5-2 at 9-11). The day following the filing of his 2013 grievance, Plaintiff was permitted to change his faith back to Islam and wear the dreadlock hairstyle, in accordance with the changed policy that had been implemented almost three years earlier. (Dkt. 5-2 at ¶ 4). Plaintiff alleges that up until April 2013, Defendants denied him his constitutional right to practice and/or attend Muslim services, classes, and holidays. (Dkt. 1 at ¶ 13). Nonetheless, it appears clear from the allegations before the Court that Plaintiff did not, at any point after the filing of the May 2008 grievance and prior to the filing of the April 2013 grievance, request to have his religious denomination changed back to Muslim and maintain the dreadlock hairstyle.

Plaintiff commenced this action on September 12, 2014, against Corcoran, Lowe, Conway, and Bellamy, as well as former Commissioners of DOCCS, Glenn Goord and Brian Fischer, in their individual and official capacities, alleging violations of RLUIPA and First Amendment claims pursuant to 42 U.S.C. § 1983. (*Id.* at ¶ 19). While Plaintiff admits that he was allowed to maintain the dreadlock hairstyle and register as a Muslim in April 2013, he contends that he has been damaged by the failure to allow for this prior to April 2013.

Defendants filed their motion to dismiss the complaint on April 21, 2015. (Dkt. 5). Defendants seek dismissal on the following grounds: (1) Plaintiff's claims for acts occurring in 2007 and 2008 against defendants Corcoran, Lowe, Conway, and Bellamy should be dismissed as time-barred; (2) Plaintiff's claims against defendants Fischer and Goord should be dismissed as the complaint contains no specific allegations against them; (3) Plaintiff's claims arising out of not being permitted to access Islamic classes and religious services should be dismissed, as Plaintiff was voluntarily registered as Rastafarian and thus was not entitled to attend services as a Muslim; and (4) Plaintiff's claims under RLUIPA should be dismissed as the act does not provide relief in the form of money damages, and government officials cannot be sued in their individual or official capacities under RLUIPA. (*Id.*). Plaintiff submitted a response on May 12, 2015. (Dkt. 9).

## DISCUSSION

### I. Legal Standard

"'In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'" *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotations and citation omitted). To withstand

dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration in original) (internal quotations and citations omitted).

In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir. 2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'"). Moreover, "a

*pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984).

Defendants submit in support of their motion to dismiss Plaintiff's April 2013 grievance and his grievance history. (Dkt. 5-2 at 3-16). Generally, a Court may not consider documents outside of the complaint on a motion to dismiss; however, a court may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and quotation omitted). Here, the documents submitted by Defendants are incorporated by reference in the complaint, which refers to the specific grievances filed by Plaintiff (Dkt. 1 at ¶¶ 10-12, 17), and accordingly, may be considered by the Court. *See James v. Correct Care Sols.*, No. 13-cv-0019 (NSR), 2013 WL 5730176, at *3 (S.D.N.Y. Oct. 21, 2013) (where the defendants included the plaintiff's grievance report as an exhibit to their motion to dismiss, and the plaintiff referred to the grievance in his complaint, court considered grievance as incorporated by reference into the plaintiff's complaint in deciding the defendants' motion to dismiss); *Peone v. Cnty. of Ont.*, No. 12-CV-6012 CJS, 2013 WL 775358, at *1 (W.D.N.Y. Feb. 28, 2013) (considering on motion to dismiss grievances where the plaintiff described them and they were integral to his claim).

## II. RLUIPA Claims

According to his complaint, Plaintiff seeks only monetary relief. (Dkt. 1 at ¶ 20). It is well established that "RLUIPA does not authorize monetary damages against state

officers in their official capacities, . . . and does not create a private right of action against state officers in their individual capacities." *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013) (citing *Sossamon v. Texas*, 131 S. Ct. 1651 (2011)). Indeed, Plaintiff seeks only monetary relief because he does not need injunctive relief; *i.e.*, in April 2013, Plaintiff was permitted to change his faith back to Islam and wear the dreadlock hairstyle, pursuant to the amended version of Directive 4914. Accordingly, Plaintiff's RLUIPA claims are dismissed.

### III.   First Amendment Claims

Plaintiff argues that Defendants violated his First Amendment rights by enforcing a DOCCS directive prohibiting non-Rastafarians from wearing dreadlocks. (Dkt. 1 at ¶ 14). In his April 2, 2013 grievance, Plaintiff states that it has "*been over five years* since DOC[C]S has forced me to change my Shi'te [M]uslim faith due to my [dread]locks." (Dkt. 5-2 at 7) (emphasis added). For the reasons discussed below, Plaintiff may not pursue these First Amendment claims pursuant to 42 U.S.C. § 1983.

#### A.   Untimeliness of Claims

The statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 in New York State is three years. *See Jewell v. Cnty. of Nassau*, 917 F.2d 739, 740 (2d Cir. 1990). Here, Plaintiff commenced this action on September 12, 2014. Thus, any conduct occurring prior to September 12, 2011, would be outside the applicable statute of limitations.

1. **Defendants Corcoran, Lowe, Conway & Bellamy**

All of the alleged unconstitutional conduct perpetrated by defendants Corcoran, Lowe, Conway and Bellamy, occurred in 2007 and 2008. Plaintiff alleges that in 2007, defendants Corcoran and Lowe ordered him to cut his hair or else be disciplined. (Dkt. 1 at ¶¶ 6-7). Plaintiff further alleges that in 2007 and 2008, defendants Conway and Bellamy denied his grievances. (*Id.* at ¶¶ 10-12). Any § 1983 claim based upon this alleged misconduct is barred under the statute of limitations.

Moreover, Plaintiff cannot pursue claims against these defendants under a continuing violation theory because there are no allegations that these defendants engaged in any continuing course of conduct, and indeed, the Directive was changed in September 2010 to allow all inmates to wear the dreadlock hairstyle. *See Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) (continuing violation requires ongoing discriminatory practice).

As a result, Plaintiff's claims against defendants Corcoran, Lowe, Conway and Bellamy, based upon events occurring in 2007 and 2008, are time barred.

2. **Defendants Goord and Fischer**

Plaintiff names defendants Goord and Fischer in his complaint, but fails to allege any specific constitutional violations committed by them. Rather, Plaintiff makes the general allegation that these defendants violated Plaintiff's rights by enforcing "flawed" policies. (Dkt. 1 at ¶ 18).

In order to bring a § 1983 claim against a prison official, "a plaintiff must allege that individual's personal involvement. . . ." *Ippolito v. Goord*, No. 05-CV-6683 (MAT),

2012 WL 4210125, at *7 (W.D.N.Y. Sept. 19, 2012). Furthermore, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Supervisory officials such as defendants Fischer or Goord may be found personally involved in a constitutional violation in the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Ippolito*, 2012 WL 4210125, at *7 (internal quotations and citation omitted).

Plaintiff has failed to plead any facts that would allow the Court to find timely asserted claims of personal involvement on the part of defendants Fischer and Goord under any of the theories outlined above. Although Plaintiff makes the conclusory allegation that these defendants enforced a "flawed" policy (Dkt. 1 at ¶ 18), there is no dispute that the policy at issue, Directive 4914, was amended effective September 2, 2010, to allow for those practicing Islam and other religions, to maintain the dreadlock hairstyle. Any claim based upon enforcement of Directive 4914, prior to its amendment in September 2010, would be time barred.

Because Plaintiff has failed to allege any specific constitutional violation committed by defendants Fischer or Goord within the applicable statute of limitations, his claims against these defendants must be dismissed.

### B. Alleged Failure to Follow Directive 4914 after 2010

Construing Plaintiff's complaint liberally, he appears to allege that notwithstanding the change in policy in 2010, he was not able to wear the dreadlock hairstyle and change his religion back to Islam, until after he filed his grievance in April 2013. However, there are no facts in the complaint attributing this alleged conduct after 2010 to any of the named defendants, let alone plausibly alleging that Directive 4914 was not followed after it was amended in 2010.

It is apparent from both the allegations in Plaintiff's complaint, as well as the grievance information submitted by Defendants in support of their motion to dismiss, that after filing his unsuccessful grievances in 2007 and 2008, Plaintiff did not file another grievance addressing the issue of his registered religion and hairstyle, until the filing of the April 2013 grievance. Moreover, there are no facts plausibly alleged in the complaint suggesting that, before he filed the April 2013 grievance, Plaintiff was not allowed to change his religion or hairstyle in accordance with Directive 4914 as amended in September 2010.

Once Plaintiff filed his grievance on April 2, 2013, he was permitted to immediately change his religious affiliation the following day. (Dkt. 5-2 at ¶ 4). Indeed, the CORC report relating to Plaintiff's April 2013 grievance indicated that "any inmate may wear the dreadlock hairstyle regardless of religious affiliation." (*Id.* at 4).

It is well-established that "[p]risoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies." *Weidman v. Wilcox*, No. 6:12-CV-6524 (MAT), 2014 WL

1056416, at *2 (W.D.N.Y. Mar. 17, 2014) (citations omitted). These procedures must be exhausted prior to commencing a § 1983 action. *Goodwin v. Burge*, No. 08-CV-00660A(F), 2011 WL 2117595, at *10 (W.D.N.Y. Mar. 7, 2011), *adopted*, 2011 WL 2119324 (W.D.N.Y. May 27, 2011). "The Court cannot consider any allegation by [the plaintiff] made in his complaints or papers that does not appear in . . . [a] grievance." *Sloane v. Mazzuca*, No. 04 CV 8266(KMK), 2006 WL 3096031, at *9 (S.D.N.Y. Oct. 31, 2006).

There are no facts plausibly alleging that Plaintiff requested to change his religious affiliation and hairstyle between 2010 and 2013. Moreover, there are no facts plausibly alleging that Defendants failed to follow amended Directive 4914 between 2010 and 2013, or that Plaintiff filed a grievance concerning any relevant alleged misconduct between 2010 and 2013. As a result, Plaintiff may not pursue a claim based upon the alleged failure to allow Plaintiff to change his religious affiliation and hairstyle prior to April 3, 2013 (when Plaintiff filed a grievance and was permitted to make these changes the next day).

Even if Plaintiff's April 2013 grievance is construed as challenging the constitutionality of Directive 4914, any such challenge would be denied as moot, as the directive was amended three years earlier in 2010 to permit all inmates to wear the dreadlock hairstyle and, upon his request, Plaintiff was permitted to register as a Muslim. *See Pilgrim v. N.Y.S. Dep't of Corr. Servs.*, No. 9:07-CV-1001 (GLS/RFT), 2011 WL 6031929, at *2-4 (N.D.N.Y. Sept. 1, 2011) (Because the plaintiff was permitted to maintain his dreadlocks without the risk of disciplinary action, his cause of action was

moot, because "the effect of the new Directive 4914 grants Plaintiff precisely the change he seeks"), *adopted*, 2011 WL 6030121 (N.D.N.Y. Dec. 5, 2011).

Accordingly, Plaintiff's claim predicated on any alleged violation of Directive 4914 after September 2010, is dismissed.

### C. Denial of Religious Services and Classes

Plaintiff alleges that while he was registered as a Rastafarian from 2007 through 2013, Defendants denied him access to Muslim classes and religious services, in violation of his First Amendment rights. (Dkt. 1 at ¶ 13). Defendants argue that this claim should fail, as Plaintiff chose to register as Rastafarian and could have changed his registration to Muslim at any time. (Dkt. 5-1 at 5).

Certainly as of September 2, 2010, Plaintiff could have practiced as a Muslim and retained his dreadlocks, as Directive 4914 was amended to allow all inmates, regardless of religious affiliation, to wear the dreadlock hairstyle. In other words, any alleged unconstitutional conduct based on Plaintiff's inability to engage in Muslim religious services and classes while maintaining his deadlocks ceased as of September 2010, when the Directive was changed to allow all inmates, regardless of religious affiliation, to wear the dreadlock hairstyle. As noted above, any claim based upon conduct occurring before 2010, is time barred.

A claim similar to Plaintiff's was rejected in *Nimmons v. Fischer*, No. 11-CV-817-A, 2013 WL 4495006 (W.D.N.Y. Aug. 20, 2013). The plaintiff was a member of The Nation of Gods and Earth ("NGE") religion, but registered as Rastafarian to avoid having to cut his dreadlocks. *Id*. at *2. Prison officials subsequently confiscated from Plaintiff a

draft of a book he was writing on "incarcerated sincere NGE members" because he was not registered with DOCCS as a NGE member. *Id.* Plaintiff alleged a violation of the First Amendment due to the confiscation of his manuscript on NGE. *Id.* at *10. The Court denied Plaintiff's claim:

> Plaintiff has alleged that despite his sincere adherence to the NGE's tenets, he has, since 2007, maintained his religious designation with DOCCS as Rastafarian, ostensibly so as to continue wearing his hair in the dreadlock style. Complaint, First Claim ¶¶ 10–11. The court takes judicial notice that since 2010 DOCCS Directive 4914, which previously forbade non-Rastafarian inmates from wearing dreadlocks, has permitted dreadlocks be worn by any inmate regardless of specific religious designation. *See* DOCS Directive 4194.III(B)(2) ("The dreadlock hairstyle is allowed ."). Plaintiff does not explain why he has not filed a form changing his religious designation to NGE given that his putative reason for designating his religion as Rastafarian, *i.e.,* so as to continue wearing his hair in the dreadlock style, is no longer valid. Plaintiff's failure to change his religious designation from Rastafarian to NGE after the DOCCS grooming regulation was amended to permit all inmates, regardless of religion, to keep their hair in dreadlocks is significant.

*Id.*

Here, Plaintiff registered as Rastafarian in 2007 (Dkt. 1 at ¶ 9), and he remained registered as Rastafarian until April 3, 2013, despite the fact that he could have registered as a Muslim and retained his dreadlocks as of September 2010. Plaintiff waited until 2013 to request a change in his religious denomination, at which point he was immediately allowed to make this change. (*Id.* at ¶ 17; Dkt. 5-2 at 4-11). As in *Nimmons*, Plaintiff offers no explanation as to why he did not change his religious denomination back to Muslim once the directive was changed in September 2010. Because Plaintiff was registered as Rastafarian during the time he was allegedly barred

from attending Muslim services (2007-2013), Defendants were not required to allow him to attend Islamic classes or services.

"It is well-settled that "'prison officials are not required to accommodate an inmate's religious demands without regard to whether or not the inmate is actually a member of the religion.'" *Nimmons*, 2013 WL 4495006, at *11 (quoting *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096-97 (2d Cir. 1997)). "While inmates are not stripped of their constitutional rights [to religious freedom] simply by virtue of their imprisonment," *Mitchell v. N.Y.S. Dep't of Corr. Servs.*, No. 6:06-CV-6278(MAT), 2012 WL 6204205, at *11 (W.D.N.Y. Dec. 12, 2012) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)), "reasonable limitations on the accommodation of religious practices necessary to achieve [penological] objectives are permitted" and "[r]egistration is one such limitation," *Jackson-Bey*, 115 F.3d at 1096. Furthermore, "[r]equiring inmates to register their religious designation eliminates speculation and guesswork on the part of prison officials and makes it less likely that a prisoner will manipulate the system by asserting various religions at various times." *Nimmons*, 2013 WL 4495006, at *11 (internal quotations and citation omitted).

Accordingly, any claim based upon the alleged failure to allow Plaintiff to attend Islamic services and classes while registered as a Rastafarian, is hereby dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted, and Plaintiff's complaint is dismissed in its entirety. The Clerk of Court is directed to close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 18, 2016
       Rochester, New York